Mr. Harris? Yes. May it please the court. My name is Brett Harris. I'm with the law and we're representing the Italian Del Monte Corporation in the United States. This case concerns both the tariff classification and valuation of certain prepared tuna products in pouches. These are things that you would find on the supermarket shelves in a foil and plastic pouch ready for consumption. Turning to the classification issue first, both the lemon, pepper, and lightly seasoned varieties of these products consist of cooked tuna in a sauce. For both products, water comprises the main ingredients of the sauce. The lemon pepper product contains approximately 2.5% oil, while the lightly seasoned product has approximately 0.6% oil. Can I ask you, did you argue below that Richter had substantially or completely displaced Stromae or whatever the name of the early season? Richter was not, Your Honor, raised in the proceedings below. It has apparently been very well hidden over the past 50 some odd years. There, to the best of our knowledge, have been no cuts in this ruling. The government did not raise it in its brief, and the Court of International Trade did not raise it in its brief. And for a related question about what was preserved, did you cite and rely on the formula regulation in the court below? The word formula was not, I do not believe, raised or used in the appellant's brief below. But the issue of the proper transaction value of the imported merchandise has always been the issue in this case with regard to the valuation of those goods, and by regulation, the valuation or transaction value is defined to include the value derived by any method available, including the application of the formula. But below, your argument really was, as it relates to valuation, your argument really was that, well, we were just, what happened afterward was just to reflect what the agreement was beforehand. That's correct. In essence, that set of facts, we would argue, constitutes a formula, because the parties agreed prior... But you never gave either the lower court or Congress an opportunity to address whether or not there was a formula. Well, the brief below, I believe, explained that the agreement by the parties prior to importation comprised an agreement with regard to what's called a cost sheet, which contains estimated values for various cost components. So the parties agreed, and this was, I think, explained in the brief below, that the price was agreed by the parties prior to importation to be comprised of X plus Y plus Z. But, and again, I think this was explained below, the parties did not know what X, Y, and Z were at the time that agreement was made. So the operation of this cost sheet in practice, we would argue, constitutes a formula under the regulation. What was actually paid at the time of the importation, $3 and something, was paid on the assumption that those were the actual costs. That is, that they weren't an estimated cost to be adjusted later, because the estimated cost was $1.87 or $1.60 something. That was not what was, in fact, paid upon the actual movement of the goods into the United States. What you thought you were paying was actual, and then you went back and said, wait a minute. There's something wrong with that. Let's fix it. No, Your Honor. The amount that was paid was the $3 somewhat change per case of a conversion cost, but it was not paid with the understanding that that was the actual amount of the goods. That, and I can give you a little bit of background. What happened was they agreed upon, the parties agreed upon, because this was a new product, nobody knew how much it was going to cost to actually manufacture it. So the parties agreed that they would use this estimated number of $1.67 per case conversion cost. Chadawat, the seller, unilaterally raised the price on his invoices to $3 and something, practically doubled the conversion cost. Del Monte paid those invoices, but not with the understanding that that was, in fact, the actual cost. They paid it essentially under protest, and Chadawat agreed, saying, this is an estimated number. We'll settle up with the actual cost later. Can you elaborate on what the essentially under protest means? Maybe this is indirect, but were there communications that said, we'll pay this for now because we really want the goods to come in, but you should understand, and maybe even you hereby agree, that this is provisional or something? That is exactly what happened, Your Honor. There was email communications. Del Monte paid the invoice amounts, even though they were greatly inflated based upon the original agreed estimates, because there was a very narrow window of opportunity to get this new product launched into Walmart and their other customers. They had put in a lot of investment, a lot of time to get these products ready. They could not afford to have those shipments delayed because of a dispute regarding the payment, so they decided to pay the invoice amount with concurrent communication by email, I believe, and also meetings with the seller, and the seller acknowledged, this is just for now. We're going to settle this up after the fact. So how would you describe what you think the formula is here that covered this sequence of events? The formula was agreed, Your Honor, prior to importation by the parties, because again, this was a brand new product. It was manufactured in a way… Well, I understand that one formula that was agreed was you pay the estimated and then we true up later, but that's not in fact what happened here, so you must have a different formula. You had, we paid the invoice and then we true up later? Well, the formula was reflected by this thing, this document called the cost sheet, and the cost sheet had a number of different components to it, including utility, labor, overhead, cost of fish, and conversion cost, and conversion cost is the term used for all the factory's cost to convert the raw fish to the finished product in the pouch, and the parties prior to importation had agreed that the final price would include adding up all of these cost categories. The conversion cost, there was an estimate assigned to it at the beginning, but again, because they had not ever made this product before, they came up with a number based upon, as best they could, based upon prior conversion costs for the other products. The conversion cost, once the goods shipped, Chanois, the seller, unilaterally raised the conversion cost, despite the agreement of the parties saying, we're going to use this estimate now and let's set off later. So the two variables that provide the formula in this case were conversion cost, in other words, the amount to actually convert the raw fish to the final product, as well as what's called a recovery factor. Because Chanois was responsible for purchasing the fish, there was an agreement, again, prior to importation that Chanois said, we think we can recover 40% of the fish we buy for uses in other areas. We can make cat food out of it, for example. We can sell it in a lesser product, and that will lower our overall cost. Chanois, when they prepared these invoices, decided, we can't use any of this fish, or we can use very little of it. We're only going to be able to recover 10%, and therefore that also... Those pre-shipping numbers were not estimates. You had an agreement, and then they just charged you more than the agreement, and you went ahead and paid it, and then realized that you paid it, and tried to get it back. So it's not like you had a formula that said, well, we think it's going to be this, but if you don't really recapture 40%, you can charge more, and then there was negotiation that related to that formula. This was just an agreement as to a number. You then paid the wrong number, and then there was an agreement to compromise. Well, Your Honor, I would disagree with that characterization, respectfully. The agreement was that the cost sheet components would govern the final price. They did assign provisional estimated numbers to those cost sheet components for purposes of entering the goods, but it was always understood prior to importation that those numbers were estimates. They did agree on numbers so that they can have an invoice to use at the time of entry, but it was always agreed that those numbers were provisional, and there are, in fact, a number of these rulings in our brief, the number of customs rulings that hold exactly that, where the parties agree to estimated costs prior to importation and then reconcile to actual costs afterward, those reductions may comprise a valid transaction value under the statute, provided there was that pre-importation agreement to make that actual to estimated cost reconciliation. Does the second issue remain in the case if you lose on the first issue? I'm sorry, Your Honor. You mean the second issue regarding valuation? Yes. Yes, it does, Your Honor. I'm happy to discuss the tariff classification issue now, if you'd like, or unless you have other questions regarding it. Well, I'll just ask you a question about that. I don't want to belabor it, but it seems to me that there's a fair bit to be said for your proposition that Richter is at least in tension with the broader reaches of Strohmeyer, in particular as to oils that reach out in the packaging because the oils remained during the cooking, but I'm not sure any of that has anything to do with the facts here where oil, a very small portion of oil, was part of what was added into the package. So I'm not sure why the Richter-Strohmeyer confusion or overruling or disagreement or whatever one calls it has any bearing on this situation where, as I say, there's a liquid introduced into the package that contains some oil. Your Honor, the liquid that was introduced into the package, and of course we don't dispute that this product has a sauce that contains a very small and diminished portion of oil, but the Court of International Trade found, as a matter of fact, that, quote, none of the claims of tuna fish is genuinely packed in oil as a matter of either simple sense or scientific analysis. So the question here is whether that liquid is oil for tariff purposes, and we would respectfully argue that this is no longer oil for tariff purposes. It's not even oil and other substances for tariff purposes. It is a new and different article of commerce with a different name and character. I'm not sure. I mean, you can call it fact-finding or not fact-finding. I guess I'm a little sensitive since sometimes we make off-the-cuff comments and they don't just coexist with rulings necessarily. I mean, but if he or she says this is kind of inconsistent with the way things are generally understood, why do we care about that? I mean, the judge was interpreting the note and the statutory provisions and concluded clearly, there's no dispute right, that with regard to those provisions, the applicability of those mean that you are packed in oil. Well, I would disagree with that respectfully, Your Honor. We care about that in this case because tariff terms are to be defined in accordance with their, where they're not defined in the tariff schedule itself, it's to be defined in terms of their common and commercial means, which are presumed to be the same. In this case, the underlying basis for the court's statement there is that this sauce is no longer oil for tariff purposes. There's no definition of oil or either oil and other substances in the tariff schedule. So that term has to be defined in terms of its common and commercial meaning. What the Court of International Trade is saying is that this sauce is not oil for tariff purposes any more than the tomato product at issue in Orlando Foods was tomatoes. It was a sauce and it was processed to such a degree that it was no longer considered tomatoes for tariff purposes and could not be considered as such in the analysis of the relevant tariff provisions there. And a similar rule should apply here. This sauce is no longer oil for tariff purposes. Yes, it has the minimum percentage of oil in it, but it is not to be considered oil or even oil and other substances for purposes of application of this note. And in fact, the Richter decision involved, again, the timing may have been different, but the sauce that was at issue in Richter was a brine consisting of salt and oil and some other herbs I believe, and the residual oil left over from the frying process. So that sauce also had some oil in it, and yet the Richter Court held that that sauce was not oil and other substances for purposes of the product being packed in oil. But in Richter, the focus was on the fact that the oil was generated during the preparation phase and not introduced at the packing stage. And in your case, whether it makes sense or not, your sauce is introduced at the packing stage. Well, Your Honor, again, the court below found whether we call it a finding factor, that this product is not packed in oil. It's not packed in oil and other substances. It's packed in a sauce. And again, even though the sauce may have a de minimis amount of oil in it, it is not the type of issue that this particular provision was meant to capture. So if the sauce that it's packed in is 50 percent oil or 35 percent oil, that's okay? I mean, the government wins in that respect, but we're dealing with just the de minimis amount. That's the difference? Or are you saying simply because it's called sauce and not oil doesn't count for you? I would argue the former, Your Honor. We argued in our brief that for something to make sense as a product of oil for tariff purposes, this court's precedent, as well as other decisions, many of them in the Court of Administrative Trade, held that a product has to be at least the essential character of oil to be considered a product of oil. So therefore, for example, in the Argo Foods case, that product was not considered to be a product of milk for tariff purposes, even though it had a small percentage of skim milk. The court held that that product was not essential character of milk. Similarly, in Pillow Tax, which was a down comforter with a cotton covering, that product was not considered to be a product of cotton, even though it had some cotton in it. Well, you've used all of your time. We'll restore two minutes for rebuttal. Thank you Your Honor, may I plead the court? Because Del Monte's products contain oil, the sauce contain oil, and for tariff classification purposes, their goods are packed in oil. When we look at Strohmeyer... In causing and altering what you were saying in the middle of your sentence, it seems to me you said two different things, one of which is probably inconsistent with Richter, and one of which is probably consistent with Richter. Is your position that because when you open the package, there's oil? When you open the package, there's oil, even if it came out of the fish, that's still packed in oil? No, Your Honor, that's not the position that we're saying. It's the sauce itself. It's the medium itself, if that contains oil. Here, it does contain oil. When added. What's that? When added. When added. Okay. When added. It definitely has oil when you open it up because it leached out of the fish. In this case or in Richter? No, no, in Richter and Strohmeyer. That's what the interesting dispute was between those two decisions. Sure, yeah, and I recognize that dispute between those two decisions. I think when you have Strohmeyer, the fish was prepared in oil, as much was drained off as possible, but then it was put into a tomato sauce that had roughly 5 point something percent oil in it, in the sauce itself. Oh, in the sauce. In the sauce. And then we have Richter Brothers, where some 40 years later, we have the herring that was also prepared in oil, but as much was drained off as possible, again, just like in Strohmeyer. But in this time, the sauce itself, there was no oil contained in the brine. I think it was called brine. It was vinegar and it was some white wine and some other ingredients, but no oil specifically in that sauce. Whereas here, we have a case where the sauce itself has some amount of oil. Sure, it's a little amount of oil, but it's purposely put into that sauce. Yeah, but that doesn't make it, it doesn't change the character. Is the analysis your friend is applying, which talks about essential character, which I've seen come up in various trade cases, is that not relevant here? Because your position is not that the oil was such that it changed it from a sauce to something other than a sauce. Sure, sure. I don't think the essential character test is particularly helpful when we have a standard here that we're looking at, which is U.S. Additional Note 1, which gives us a definition of what it means to be packed in oil. Because it could be packed in oil or fat, or in oil or fat and other substances. So here we have packed in oil. Well, those explanatory notes are useful, but they're not controlling. Well, respectfully, Your Honor, this is an Additional Note 1, so this is controlling because it's not an explanatory note. It's an additional note. So in construction of the terms, we look to the tariff itself and the U.S. notes, the additional U.S. notes. They're an interpretive guide, and those are binding. But again, it still talks about packing. It still refers to it as a packing medium. Yes. I mean, these things could have been shipped with sauce in a separate package and the fish in a separate package to be combined. I mean, I just thought of microwaving fish. It scares me a little bit. But they could have been shipped in separate packages. In other words, it's not that they put it in oil so that in order to preserve it, they happen to have a sauce that they want you to eat with it. Sure, and it was packed in a sauce that contained oil for that purpose. So it was kind of a unified product where when you go home and you put it in your microwave, that you'd have ready-to-eat meal. Everything was all together at once. So the additional note says that whether it's at the time of packing or prior thereto, it doesn't matter for purposes of being packed in oil. It could be at the time of or prior to. You may not know the answer to this, but why is there such a huge differential between something that happens to be in any kind of oil and something that happens to be in water? There's a big, big difference in the tariff. I know. I'm trying to understand why. I believe it's 30-something. Why that is, my best guess, and it's not in the record, is I think it was protecting a domestic industry back in the day. I don't know how much that industry exists anymore, to be honest, Your Honor, but I'm not sure. I'd have to do supplemental briefing on that issue. But I think Judge O'Malley's question about packed gets to the word packed. Doesn't, in your view, the word packed kind of connote that something is really consumed within it as opposed to just a teeny bit, a de minimis amount? I recognize that, Your Honor. I mean, it's the sauce itself that's being packed in, and if we look at the sauce that contains oil, then that's packed in oil. And I say that that's packed in oil because the note itself doesn't distinguish between fresh or amount. If the sauce had a quarter of a teaspoon of sugar, would you say under any circumstances it's packed in sugar? If there was an additional note 1 that said that to be packed in sugar was to be packed in any sugar or other substances, then yes, I would. Well, it doesn't say any, does it? It says and other substances, but I don't know. Is the word any found in note 1? Or in added oil or fat and other substances. So I would say that, sure, yes, we recognize that there's not 50% oil in these products. There's not 30% oil. There's a small amount of oil. But I submit that it's not de minimis because it was introduced for a purpose. That oil was put into the sauce. It was not residual from the fish. It was put into the sauce specifically to sort of disperse the flavors, the mouthfeel, the coat, something like that where it adds a flavor and a purpose to the final product. If we're talking de minimis, de minimis means that it's just going to be residual like Richter Brothers was from the actual preparation where we tried to get rid of as much of it as possible. Well, no, I understand the distinction between this and Richter, but under your definition of de minimis, that would be every single ingredient of the sauce, right? You would be making the same argument. There's nothing peculiar about the function of oil in the sauce that changes that, right? As long as the oil is in the sauce, as long as it's specifically put into the sauce, then yes. If there are no further questions with respect to classification, I will turn to valuation. With respect to value, the statute's clear that when calculating transaction value, any post-import rebates or decrease in value are not factored in. So we have a situation here where the invoices that were paid and at the time of import was roughly about $3 for these conversion costs and about 10% recovery. And so after the fact, 10 months later, after a series of negotiations, weekly phone calls that the designated agent of Del Monte said was just going nowhere, finally after 10 months, they agreed to these terms 10 months later that were now $1.87 conversion costs, 40% to the recovery. Those were not the same terms that were initially reflected in the estimated cautions prior to import. So now we have three sets of terms. We have pre-import terms, we have import terms, and post. And now Del Monte's bringing up on appeal that, well, this constitutes a formula. Well, when we're looking at a formula, if we have someone unilaterally changing the price and inflating it, basically taking Del Monte for a ride when they're trying to import this stuff, how can that be a formula? All we have are estimated costs. There's no formalized contract, no formal terms. We look to the HQ rulings and the different ones that we've cited too in our briefs, and the one consistency that we see is that there's a formula in terms of actually finding a formula. A, basically you make that application to customs beforehand, say, I want a ruling on how I'm going to calculate this transaction value. That was never done here. We're just looking at this all post hoc after the fact, after the time of import. But isn't what you really care about is what they actually paid? Yes. And ultimately, isn't what they actually paid reflected in the post-import negotiations? Well, what we care about is what's paid at the time of import. That's the only way customs can calculate value unless there's a formula in place beforehand that customs has been put on notice to actually calculate this formula, that customs has accepted. And now this means that if we were to go with Del Monte's way of thinking about it, then every single import that we have 10 months later, a year later, any importer could say, well, actually, it's much lower than that. It's much lower than that because we have these other issues with our manufacturer. The market changed or this changed. How can customs do its business in that respect? All customs has in front of it at the time are the invoices, which were paid, and what's declared the value of the inventory. I'm not saying the markets changed or facts changed. We made a mistake. That was a wrong number, and the parties corrected it. And they did. I can see how Del Monte paid an almost disinflated amount because the manufacturer took it for a ride. I would submit that their bone of contention, then, is with the manufacturer. Go after them to get the money. Customs could only value merchandise at the time of entry unless, yes, there is that formula in place. Did you know at the time that the entries were made and customs decided on the duties, did customs have any awareness that the amount paid, namely what was on those invoices, was either about to be disputed or already disputed? No. Customs was there was no prior application, that there was going to be any adjustment to the value. When we look at the HQ rulings, we have different scenarios where customs has said there was a formula because, in a contract, it says this is how we're going to calculate how value is going to be. But two months from now, we're going to have to revisit it because of X, Y, and Z factors. And two months from now, we're going to submit additional information. And six months from that, then we're going to then reconcile all these prices and fluctuations together, and then we will provide customs with that information. I don't remember. Is there something in the regulations that talk about, whatever the regulations are that talk about formula, that require notice to customs upon entry of the existences? I could be mistaken, but not that I'm aware of. It's pretty silent when we look at the regulation. It just says the price paid payable can be pursuant to these specific instances or possibly a formula. But it doesn't say you must put customs on notice. And that could apply even in transactions between unrelated parties. Some of your brief, and just forgive me for not remembering the details, talks about some rulings having to do with parties that are in the same corporate family. The case that we discussed in our brief had to do with just related parties, and so we were attacking that HQ ruling for saying that it's distinguished here because we're dealing with unrelated parties. But as Del Monte rightfully pointed out in his reply brief, customs has issued other rulings where it has accepted a formula between unrelated parties. So our position here is that how can there be a formula when one party is unilaterally changing the terms? There's been three different sets of prices and recovery costs that have gone up pre-, during-, and post-import. There's no memorialization of terms in the formal contract. But importantly, there's no memorialization of how adjustments will be calculated, when they'll be calculated, how they'll be calculated, nothing. Is the policy behind this statutory bar on taking account of rebates simply one of maximum finality for customs purposes? Or is there some other policy that worries about some kind of misbehavior? Well, that's a very good question. My understanding is that customs does not want there to be one person who has final control or has the ability to have a unilateral control. I'm just trying to see how I can phrase this to best answer your question. I don't know for sure. I don't know for sure. But I know that there seems to be a policy of a finality of this is for efficiency. We're looking at the invoices. This is how at the time of import, you know, we are classifying the goods. We're valuing the goods for efficiency to move them into the country. And so if after the fact that it could be at the whim of one party saying something is wrong with those terms, customs can't do its job. It can't do its job properly. We'll just open up this huge door that could go on forever of how to reconcile terms. If there are no other questions, Your Honor, I respectfully request that this court affirm the trial court's decision below. Thank you. Thank you, Your Honor, for the additional time. Just a couple of points. Not every refund is a disallowable rebate. And as the customs rules that we cited to and the government has mentioned here reflect, there are a number of situations where a post-importation refund is an allowable reduction in price under transaction value. And I would agree with the government here that there is no requirement in the customs regulations that an importer obtain prior approval to use a formula in order to obtain such a reduction in price if a valid formula exists. And the issue turns on whether there was a factual agreement between the parties prior to importation to use this formula. As I understand, what is it, in A4 of the CIT ruling, there's a quote of some paragraph that can maybe be your opposition to summary judgment or something. Paragraph 8, I think, has you saying that Shafiwat actually departed from the agreement about how to arrive at the right number in the invoice. Why doesn't that mean that whatever the formula was, they weren't following? Your Honor, they departed from the estimated number. They came up with – they unilaterally came up with their own estimate. In other words, how much they wanted to be paid, and I would submit that it was a negotiation ploy. It's easier to negotiate if you're negotiating from a position of strength if you already have the money. And they knew that Del Monte was trying to reach this very narrow window of marketability for their products. They knew that Del Monte really had no choice but to pay this revised estimate. But again, there is a factual – there is email correspondence here with the manager of Chaniwat saying, we know, yes, we invoiced you at a higher amount, but this is provisional. We are going to settle this up. So it was an increase in the estimated amount, but it was not intended to be Chaniwat's statement of the final actual amount to be paid. And you agree, Customs didn't have any information about the unsettled nature of the number on the invoice at the time that the entries occurred. That's correct, and I'm sorry. I know I'm out of time. Just one last point. It is oftentimes the case that Customs does not have information regarding price increases either, and unilaterally Customs has no problem if an importer pays additional money to the seller after the fact in accounting for that transaction. Okay, I think we have the argument. We thank both counsels. Thank you.